UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Seifert,
    Plaintiff,

    v.                                    Civil Action No. 2:08-CV-259

Robert Hofmann, Delores
Burroughs-Biron, M.D.,
    Defendants.

**REPORT AND RECOMMENDATION**
(Doc. 14)

Plaintiff Christopher Seifert, a Vermont inmate proceeding *pro se*, claims that the defendants have violated his rights under the American with Disabilities Act ("ADA"). Specifically, Seifert alleges that his mental illness inhibits his ability to control his behavior, yet the defendants have required him to be free of any prison Disciplinary Reports ("DR") for a period of 12 months before he will be eligible for a rehabilitative program known as Cognitive Self Change ("CSC"). If Seifert does not participate in the CSC program, he will not be eligible for supervised release and will be required to serve his maximum sentence.

Currently before the Court is the defendants' motion to dismiss, in which they inform the Court that the DR-free period has been waived. They also claim that once allowed into the CSC program, Seifert voluntarily withdrew. The defendants further argue that Seifert has failed to state a claim under the ADA, and that to the extent he is bringing a due process claim, he has no liberty interest in an early release from prison. For the reasons set forth below, I recommend that the motion to dismiss be GRANTED,

but that Seifert be granted leave to amend his complaint.

## **Factual Background**

For the limited purpose of ruling on the motion to dismiss, the facts alleged in the complaint will be accepted as true. Seifert was convicted in 2006 of a series of misdemeanors, including Reckless Endangerment, Retail Theft, and Furnishing Alcohol to a Minor. Pursuant to a Department of Corrections ("DOC") directive, Reckless Endangerment is a "Listed Offense" that requires Seifert to complete the CSC program if he wants to be eligible for supervised release prior to his maximum sentence date. The defendants report that Seifert's minimum release date passed on February 18, 2009, and that his maximum sentence expires on April 20, 2011.

Seifert filed this action because DOC staff required him to remain DR free for one full year before could be admitted to the CSC program. The complaint characterizes this requirement as "totally unacceptable because it is impossible for me to remain DR free for any extended period of time due to my disabilities." (Doc. 4 at 6). Seifert's disabilities allegedly consist of "several mental health disorders which include manic depression, Aspburgers [sic] Syndrome, acute anxiety and adult ADHD, all of which effect my behavior." *Id.* at 5. His filings show 94 disciplinary rule violations since November 2005, and 200 such violations over his entire institutional history going back to 2001. (Doc. 23 at 2); (Doc. 23-2).

Seifert's filings also document the DOC's initial requirement that he "remain DR free for a period of at least one year prior to his entry into the CSC." (Doc. 23-2 at 7). In

2

the same set of documentation, however, there is an update from January 22, 2009 stating that "Mr. Seifert's case was reviewed at a Central Level and it was decided that he would not need to be DR free for one year before entering CSC." *Id.* The defendants highlight this fact in their motion to dismiss, arguing that Seifert's discrimination claim is now moot.

The defendants have also submitted with their motion to dismiss a document showing that on December 21, 2008, Seifert was enrolled but declined entry into the CSC program. (Doc. 14-5). Seifert concedes that he withdrew from the program, but explains that he "fell victim to his mental illnesses" and became engaged in an argument with a CSC program facilitator over class credit. He also asserts that he withdrew because he was not receiving "specific assistance to help him compensate for his mental illness and learning disability." (Doc. 23 at 3).

This latter argument suggests that even though the DR-free period was waived, Seifert believes there have been additional ADA violations. These additional claims are discussed at length in his opposition memorandum, in which he sets forth facts and claims that go well beyond his initial allegations. One such claim is that "[a]t no time was the plaintiff properly evaluated by mental health professionals" or given "a complete assessment of the plaintiff's ADA request for accommodation." *Id.* at 19. Seifert asserts that such evaluations and assessments are mandated by DOC regulations. *Id.*

Indeed, in a letter dated November 6, 2008, defendant Delores Burroughs-Biron, M.D., Health Services Director for the DOC, informed Seifert that "all offenders

mandated to attend a needs-reducing program are screened in an effort to identify disabilities that may need to be addressed through an accommodation in order for them to participate in program services." (Doc. 23-5 at 2). In a subsequent letter to Seifert dated December 30, 2008, Dr. Burroughs-Biron against stated that "[p]rior to entering CSC, you will be given a pre-program screening for disabilities." (Doc. 23-7 at 2).

Seifert's opposition to the motion to dismiss, filed on August 14, 2009, argues that these screenings were never performed. However, as of July 13, 2009, it appears that some form of review had been completed. In a letter of that date, DOC personnel informed Seifert that they had performed

> a thorough examination of your medical history, reviewed your ADA requests and looked over all your correspondence regarding accommodations for programming.
>
> None of the submitted information supports changing the requirement of completion of the Cognitive Self Change Program. It is also decided that upon your return to Vermont and before you begin the CSC groups, you will have the opportunity to meet with a psychiatric provider to evaluate any appropriate psychiatric regimens.
>
> At this time, there is also no indication that you meet the clinical profile of an individual who is Severely Functionally Impaired.

(Doc. 23-9). Similarly, on July 6, 2009, an investigator from the Prisoners' Rights Officer wrote to Seifert and explained that "[t]hough you do have a mental health diagnosis, the fact is that you are far too functional for DOC to consider you an SMI inmate." (Doc. 23-13). In response to these letters, Seifert submits that if he is being denied accommodations because he is not considered seriously enough impaired, then the

DOC's view of impairment is too narrow. (Doc. 23 at 22-28).[1]

The defendants' motion to dismiss appropriately addresses only the issue raised in the complaint, to wit, the denial of access to the CSC program pending completion of 12 months without a DR.

## Discussion

I.  **Motion To Dismiss Standard**

The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As such, their motion tests the legal rather than the factual sufficiency of Seifert's complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the Court must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), and draw all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York*, 53

---

[1] For relief, Seifert asks the Court to order his immediate release and to revise his case plan so that he is not required to complete the CSC program. If the Court were to accept Seifert's request for immediate release at face value, it might be compelled to construe the entire complaint as a petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). However, taking the complaint in its entirety, and also focusing on Seifert's request for a re-write of his case plan, it seems that he is in fact requesting *access to programming* that will make him eligible for release prior to the expiration of his maximum sentence. His pleadings and other filings suggest that he wants the same access as is provided to other, non-disabled prisoners, and that such access be provided with the necessary accommodations. Accordingly, I recommend that the Court construe the case in the form that Seifert has presented it: a civil action under the ADA.

F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." *Bell Atlantic Corp. Twombly*, 550 U.S. 544, 556-60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In deciding a motion to dismiss, the Court may consider documents attached to the complaint or incorporated in it by reference, matters of which judicial notice may be taken, or documents that the plaintiff relied upon in bringing suit and either are in his possession or of which he had knowledge. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2000). Moreover, because the defendants' mootness argument raises the question of subject matter jurisdiction, the Court "may consider evidence outside the pleadings" with respect to that issue. *Morrison v. National Australia Bank, Ltd.*, 547 F.3d 167, 170) (2d Cir. 2008).

## II.     Mootness

The defendants first argue that Seifert's claims are moot because he was allowed to participate in CSC, but withdrew voluntarily. Insofar as Seifert's claims consist solely

6

of the allegations in his complaint, the defendants are correct.

Pursuant to Article III of the United States Constitution, federal court jurisdiction is limited to "Cases" and "Controversies." The case and controversy requirement means that, "at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001). "When the issues in dispute between the parties are no longer live, a case becomes moot, and the court - whether trial, appellate, or Supreme - loses jurisdiction over the suit, which therefore must be dismissed." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (internal quotations and citations omitted).

Seifert brought suit because he was being denied access to the CSC program until he could demonstrate 12 months of good behavior. Events the occurred after Seifert filed his complaint have rendered that claim moot, as the "issue in dispute" – whether he should be required to go DR-free before he can participate in CSC – is "no longer live." *Id.* The motion to dismiss the complaint should therefore be GRANTED.

Although his initial claims are no longer viable, Seifert's filings suggest that there may be new, and certainly related, issues that have arisen under the ADA. For example, as discussed above, Seifert believes that his entry into the CSC program should have included a screening of his mental health issues, and accommodations should have been made for his disabilities. Seifert may also wish to contest the DOC's conclusion that he is not "Severely Functionally Impaired" insofar as that determination impacts his

entitlement to accommodations under the ADA.[2]

Rather than require him to file a separate action, interests of fairness and judicial economy would best be served by allowing Seifert an opportunity to amend his complaint. Accordingly, if the Court grants the defendants' motion to dismiss, I further recommend that Seifert be allowed 30 days from the Court's order to amend his complaint so that he can set forth any viable ADA claims as they stand at that time. Any amended complaint must, of course, comply with the rulings issued by the Court as a result of the defendants' remaining arguments for dismissal. My recommendations on those arguments are set forth below.

## III.    Failure To State A Claim

A claim is only viable if it is adequately pled. The defendants argue that, in addition to mootness, Seifert's ADA claim should be dismissed because he has failed to identify a "major life activity" that is impaired by his alleged disabilities. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "disability" as either: (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities; (2) a record of such impairment; or (3) being regarded as having such an

---

[2] In identifying these issues as potential claims, the Court is merely reiterating the arguments that Seifert has presented in his opposition to the motion to dismiss. The Court is not expressing any opinion as to the merits of such claims at this time.

impairment. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999).

When determining whether a plaintiff suffers from a disability that substantially limits one or more major life activities, the Court must use a three-step approach. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998) (citation omitted). First, the Court must determine whether the plaintiff suffers from an impairment. *Id.* Second, the Court must ascertain whether the life activity identified by the plaintiff constitutes a "major life activity." *Id.* Third, the Court must determine whether the plaintiff's impairment "substantially limits" the major life activity he has identified. *Id.* "If a plaintiff fails to identify the specific activity limited by the impairment and fails to allege that it constitutes a major life activity, the ADA claim must be dismissed." *Giraldi v. Bd. of Parole*, 2009 WL 3191530, at *9 (N.D.N.Y. Sept.30, 2009) (citing *Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 153-54 (2d Cir. 1998)).

As set forth in the relevant EEOC regulations, a major life activity includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 130.2(I). Based upon the allegations in the complaint, the Court cannot discern which such tasks, if any, are impaired by Seifert's mental illness. Reading the complaint liberally, the only life activity that Seifert claims is impaired is his ability to behave while in prison. Accordingly, Seifert has failed to properly allege an ADA claim, and the claim should be DISMISSED.

Again, however, leave to amend should be granted. *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) ("when addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'") (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)) . Past cases have held that severe mental illness does not necessarily render someone disabled. *See, e.g., Horwitz v. L & J.G. Stickley, Inc.*, 122 F. Supp. 2d 350, 355 (N.D.N.Y. 2000) (finding that plaintiff with bipolar disorder who was medicated was not disabled within meaning of ADA, even though her disability was "expected to continue indefinitely and she will be required to take medication and undergo therapy for the rest of her life," because, despite the disease, she was "stable and fully functional" and the disease did "not substantially interfere with her major life activities"), *aff'd*, 20 Fed. Appx. 76 (2d Cir. 2001).[3] Nonetheless, if Seifert believes that he can state a valid ADA claim, and that his disabilities impair a major life activity, he should be granted 30 days in which to file an amended complaint setting forth such a claim.

## IV. Liberty Interest In Early Release

The defendants next argue that, to the extent Seifert is bringing a due process claim, he has no liberty interest in early release. Although Seifert has not referenced due

---

[3] The Court notes that the ADA Amendments Act of 2008 has expanded the definition of a "disability." Pub. L. No. 110-325. Whether any of the 2008 amendments are relevant here, and whether they apply to conduct prior to the Act's effective date of January 1, 2009, are questions that are not currently before the Court.

process specifically, he does allege that his denial of access to the CSC program was "an arbitrarily administered extension[] of my incarceration in violation of my protected liberty interest in an earlier release." (Doc. 4 at 6). Giving Seifert's *pro se* complaint the required liberal reading, the Court must allow for the possibility that these allegations are an attempt to set forth some form of due process claim.

Under the Fourteenth Amendment, a person may not be deprived of a constitutionally protected liberty interest without due process of law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). However, Seifert has no liberty interest in early release from prison. *See Lee v. Governor of State of New York,* 87 F.3d 55, 58 (2d Cir.1996) (holding that a rule rendering inmate eligible for temporary release program did not implicate an interest protected by the Fourteenth Amendment); *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir.1997) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest."); *Elliott v. Vermont Dep't of Corr.*, 2008 WL 5104203, at *3 (D. Vt. Nov. 6, 2008). Consequently, there can be no due process violation, and to the extent any such claim is a part of the complaint, it should be DISMISSED.

## V.     Retaliation

The defendants' final argument is in response to an ADA claim of retaliation. The Court finds no such claim in the complaint. If Seifert is alleging retaliation, he must assert the claim in a fashion that give the defendants "'fair notice of what [his] claim is

and the grounds upon which it rests.'" *Duro Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As no such claim is raised here, the Court need not render a ruling on this issue.

## **Conclusion**

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Doc. 14) be GRANTED, and that if this Report and Recommendation is adopted, the Court allow Seifert 30 days in which to file an amended complaint.

Dated at Burlington, in the District of Vermont, this 15th day of October, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objection which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1, 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).